IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION



| | |
|---|---|
| PAUL A. MARTIN, <br><br> *Plaintiff,* <br><br> v. <br><br> U.S. BANK NATIONAL ASSOCIATION AND SAMUEL I. WHITE, P.C., <br><br> *Defendants.* | CASE NO. 6:12-cv-00002 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on a motion to dismiss for failure to state a claim filed by Defendant U.S. Bank National Association ("U.S. Bank"). On March 21, 2012, I conducted a hearing on Defendant's first motion to dismiss the original complaint of Plaintiff Paul Martin ("Martin"). At the hearing, Martin agreed to drop Samuel I. White, P.C. as a defendant in this action,[1] requested leave to amend his complaint, and represented that he would, if granted such leave, abandon two of the counts contained within his original complaint. The same day, I issued an order granting Martin leave to file an amended complaint and denying U.S. Bank's motion to dismiss as moot.

On April 4, 2012, Martin filed his amended complaint in which he alleges a single cause of action for actual fraud against U.S. Bank. Thereafter, on April 11, 2012, U.S. Bank filed a motion to dismiss Martin's amended complaint. For the reasons that follow, I will grant U.S. Bank's motion.

---

[1] By agreeing to drop Samuel I. White, P.C. as a defendant, Martin effectively conceded that the Court has diversity jurisdiction over this action, which U.S. Bank removed from the Bedford County Circuit Court on January 5, 2012. Samuel I. White, P.C. was terminated as a defendant in this matter on March 21, 2012.

I. BACKGROUND

This action arises out of U.S. Bank's foreclosure and sale of a home in Moneta, Virginia that was formerly owned by Martin. The facts alleged in Martin's amended complaint, which at this stage I must accept as true, are as follows.

In February 2011, Martin, for the first time, failed to make the monthly payment on the home mortgage loan he had obtained from U.S. Bank in 2009. In April, Martin, who was by that time two months delinquent in making payments on the mortgage, contacted U.S. Bank in order to request a loan modification. A U.S. Bank representative with whom Martin spoke told him that in order to be eligible for a "Making Homes Affordable" loan modification, Martin would need to be in default for three months. However, in July 2011, U.S. Bank notified Martin that he had been declined for the "Making Homes Affordable" loan modification because that program only applied to loans closed prior to January 2009 (Martin's loan had closed in March 2009). However, on July 27, 2011, U.S. Bank offered Martin an opportunity to apply for a "loan workout" program. On August 2, 2011, Martin submitted his loan workout application to U.S. Bank. Martin claims that, from that date until November 14, 2011, he regularly communicated with U.S. Bank via email correspondence and telephone calls.

By letter to him dated September 29, 2011, U.S. Bank informed Martin that his eligibility would be determined within thirty calendar days, and that during the time that it was processing his application, it would not refer Martin's loan to foreclosure or conduct a scheduled foreclosure sale if the loan was already in foreclosure. U.S. Bank further stated in the letter that, in the event it did not approve Martin for a foreclosure alternative, Martin would receive a non-approval notice and, Martin contends, an opportunity to appeal U.S. Bank's decision. By letter dated November 3, 2011, and received by Martin on November 10, 2011, U.S. Bank informed Martin

that a "relationship manager" had been assigned to assist him. Martin asserts that U.S. Bank never afforded him an opportunity to speak with this individual.

Martin alleges that on November 9, 2011, he called U.S. Bank and requested an update on the status of his application. A representative told him that his application was still being reviewed. When Martin called again on November 14, 2011, a U.S. Bank representative told him that his application had been denied and that his property had been sold at a foreclosure sale earlier that morning.[2] Allegedly, the representative told Martin that his application had been denied because the value of the property exceeded the outstanding principal owed on the loan, and because Martin's loan payment could not be reduced by 10% or more. Martin claims that he did not receive U.S. Bank's non-approval notice, which was dated November 10, 2011, until November 28, 2011.

On the basis of these facts, Martin claims that U.S. Bank intentionally misled him to believe that his property would not be sold at a foreclosure sale until he had first received a non-approval notice, an opportunity to appeal that decision, a chance to explore other alternatives to foreclosure, and an opportunity to bring his mortgage current. In this vein, Martin maintains that he detrimentally relied on U.S. Bank's misrepresentations. With respect to relief, Martin seeks an order declaring the sale of his property null and void, and he asks that I reinstate his mortgage upon payment of the outstanding principal and interest owed on the loan.[3]

---

[2] Martin concedes that throughout the time that he was trying to obtain a loan modification, U.S. Bank had been routinely scheduling his property for foreclosure sales since August 2011. Evidently, prior to the November 14, 2011 sale, each time the property was scheduled to be sold, U.S. Bank would notify Martin approximately two days beforehand that it was postponing the sale in light of the fact that his application for a loan modification was still being reviewed.

[3] Plainly, in the course of amending his complaint, Martin has dropped his claim to damages from U.S. Bank. However, that fact does not divest the Court of its diversity jurisdiction over this action. Post-removal events, including the amending of a complaint in order to reduce the amount in controversy below the jurisdictional threshold, do not ordinarily deprive federal courts of diversity jurisdiction (assuming, as is the case here, that such jurisdiction existed at the time of removal). *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("And though, as here, the plaintiff after removal, by stipulation, by affidavit, or by < *continued . . .* >

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

When, as here, a plaintiff asserts a claim for fraud, he must state with particularity the circumstances that constitute the fraud. Fed. R. Civ. P. 9(b). Failure to comply with this particularity requirement is treated as a failure to state a claim under Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999). "[T]he

---

<... *continued* > amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."); *see also The Burt Co. v. Clarendon Nat'l Ins. Co.*, 385 F. App'x 892, 894 (11th Cir. 2010) ("[E]vents occurring after removal, such as the post-removal amendment of a complaint to remove certain claims, which may reduce the damages recoverable below the amount in controversy, do not divest the district court of jurisdiction."); *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255–56 (4th Cir. 2002) ("[A] court determines the existence of diversity jurisdiction at the time the action is filed, regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy.") (citations and internal quotation marks omitted).

'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* at 784 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 290 at 590 (2d ed. 1990)). Conditions of a person's mind, such as malice, intent, and knowledge, are exempt from this particularity requirement and may be alleged generally. Fed. R. Civ. P. 9(b). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

### III. Discussion

It is well-established that federal courts sitting in diversity apply the substantive law of the forum state, including the forum state's choice of law rules. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In Virginia, the substantive law of the place of the wrong governs the proceeding. *See Frye v. Commonwealth*, 345 S.E.2d 267, 272 (Va. 1986). Accordingly, in the case at hand, Virginia's law on fraud applies.

Because the misrepresentations allegedly communicated by U.S. Bank referenced future events, they are properly assessed in a claim for actual, as opposed to constructive, fraud. *See Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 341–42 (Va. 2008) (stating that although a claim for constructive fraud cannot be based on a promise of future action, "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud."). In order

5

to state a claim under Virginia law for actual fraud, a plaintiff must allege: "(1) a false representation, (2) of material fact, (3) intentionally and knowingly made, (4) with intent to mislead, (5) with reliance by the party misled, (6) and with resulting damage or injury to the misled party." *Howarth v. Rockingham Publ'g Co.*, 20 F. Supp. 2d 959, 970 (W.D. Va. 1998).

Martin contends that U.S. Bank made several false representations in connection with his attempts to modify his loan. First, Martin claims that the September 29, 2011 letter from U.S. bank falsely assured him that his eligibility for the loan modification would be determined within thirty calendar days, when in actuality, it took forty-two days.[4] According to Martin, this representation made him believe that the foreclosure sale scheduled for November 14, 2011 would not occur unless he had heard back from U.S. Bank regarding the status of his application. However, there is nothing in the letter declaring that the thirty-day time limit would begin on September 29. To the contrary, the letter states that the thirty days would begin to run once Martin's application package was determined to be complete, and Martin does not allege on what day that might have been. Moreover, the letter does not suggest that, if the review period were to take longer than thirty days, a pending foreclosure sale would necessarily be postponed or canceled.[5]

Second, Martin claims that the September 29, 2011 letter from U.S. Bank represented that in the event his application was denied, he would be given the reasons for his ineligibility as well as an opportunity to either appeal that eligibility decision or bring his mortgage current. In pertinent part, the letter states:

---

[4] It is proper to consider the letter at this stage, for a copy of a written instrument that is an exhibit to a pleading (in this case, Martin's amended complaint) is deemed a part of that pleading. Fed. R. Civ. P. 10(c); *Thompson v. Greene*, 427 F.3d 263, 268 (4th Cir. 2005).

[5] It is not clear precisely when Martin's loan went into foreclosure; however, in his response to U.S. Bank's motion to dismiss, Martin states that during the pendency of the review of his loan modification application, U.S. Bank postponed several scheduled foreclosure sales of his property, beginning in August 2011.

> During the time your request is being processed, we will not refer your loan to foreclosure or conduct a scheduled foreclosure sale if your loan is already in foreclosure. If you receive a Non-Approval Notice, you must contact us immediately to discuss the reason for non-approval if you wish to appeal our decision. Once the decision has been made that you are not approved for any alternative to foreclosure, we will regrettably pursue foreclosure and the sale of your home if you are unable to pay your mortgage or bring it current.

Am. Compl. Ex. B. While this language might, at first blush, imply that Martin had a right to appeal or bring his mortgage current prior to a foreclosure sale, a close reading reveals that U.S. Bank did not affirmatively state that it would refrain from foreclosing on (or selling) the property after denial of the application. In other words, the letter does not contain a representation that Martin would be given time to pursue other options in the event that his application for a modification was denied. In fact, despite the letter's reference to the potential for an appeal *if* Martin were to receive a non-approval notice, U.S. Bank explicitly states that it would pursue a foreclosure sale "*[o]nce* the decision has been made that you are not approved for any alternative to foreclosure." *Id.* (emphasis added).

Further, the letter does not state that U.S. Bank would wait to conduct a foreclosure sale until after Martin received his non-approval notice. While the letter suggests there is a way to appeal denial of the application, apart from instructing the borrower to contact U.S. Bank immediately, the letter does not establish any grace period during which U.S. Bank pledged that it would not move forward with a previously-scheduled foreclosure sale of the property. To the extent that Martin asserts that such representations were made in phone conversations with U.S. Bank representatives, he has failed to allege the nature of those calls with the degree of specificity demanded by Federal Rule of Civil Procedure 9(b).

Third, Martin alleges that U.S. Bank misrepresented the contents of the non-approval notice. According to Martin, the notice was supposed to indicate the reason he was ineligible for the loan modification, thereby allowing him to remedy the deficiency. It is true that the

7

September 29, 2011 letter states that in the event Martin was determined to be ineligible for a loan modification, a non-approval notice stating the reason for his ineligibility would be issued. However, as I have just described, U.S. Bank does not state in the September 29 letter that it would wait for Martin to receive the non-approval notice before proceeding with a foreclosure sale, much less a previously-scheduled foreclosure sale as was evidently the case here. In the non-approval notice of November 10, 2011, which Martin received on November 28, 2011, U.S. Bank explains that it denied Martin's application on the basis of information gathered from national credit reporting agencies. The non-approval notice goes on to state that U.S. Bank "will regrettably proceed through the foreclosure process if your loan is not brought current or paid off prior to a scheduled foreclosure sale." Of course, by the time Martin received this notice, his home had already been sold. Accordingly, he argues that U.S. Bank did not afford him the opportunity it implied he would have to bring his loan current. But, the fact remains that despite Martin's claims to the contrary, the September 29 letter did not guarantee that he would receive more detailed information in the non-approval notice, that he would be given time to address the cause of his ineligibility, or that he would be provided with an opportunity to bring the loan current upon receipt of the non-approval notice.

Finally, Martin claims that U.S. Bank's assignment of a relationship manager to his account provided him with a false sense of security, leading him to believe that no foreclosure sale would occur without direct contact from this representative. However, the November 3, 2011 letter that U.S. Bank sent to Martin to inform him that the relationship manager had been assigned includes no assurances that this representative would contact Martin in the event his loan modification application was denied. Rather, the letter only states that the relationship manager would serve as the sole point of contact for account information, and it advises Martin to call or send an e-mail if he has questions.

In sum, it does not appear that any of the letters that form the basis of Martin's fraud claim contain false representations. According to Martin, the September 29, 2011 letter led him to believe that by applying for a loan modification and occasionally calling to check on his application's status, he was doing all that was necessary to prevent a foreclosure sale. Additionally, Martin believed that he would have a window of opportunity to fix his application in the event it was denied, or at least a chance to bring his loan current. While these assumptions may not have been unreasonable, they were ultimately inferences that did not correspond to any specific representations made in the letters from U.S. Bank.

Separately, as I previously mentioned, a claim for actual fraud requires the plaintiff to allege that he relied on the purported misrepresentations. In taking no action to manage or repair the delinquency of his loan, Martin claims that he relied on U.S. Bank's statement in the September 29, 2011 letter that it would not complete a foreclosure sale while his loan modification application was being reviewed. However, Martin's amended complaint is devoid of any assertions that he had the means to bring his mortgage current in the event that U.S. Bank denied him a modification. Moreover, Martin does not allege that, aside from the loan workout program, he was interested in, or could qualify for, any other loss mitigation alternatives other than a foreclosure. Thus, Martin has not pled facts showing that he would have acted any differently if he had not applied for the loan modification program or if there had been a longer period of time between denial of his application and the foreclosure sale of his home. While Martin's loss of his property certainly represents the sort of detriment that an actual fraud cause of action requires, he has not alleged facts showing that he would have otherwise been able to keep the property upon the denial of his application. Therefore, on the basis of the facts he has alleged, it stretches reason for Martin to argue that he relied on the representations of U.S. Bank

9

in its correspondence with him, as if he had the wherewithal to bring himself out of the arrearage into which he readily admits he had fallen.

Because Martin has inadequately alleged reliance on false representations, he has failed to sufficiently plead at least two elements of an actual fraud cause of action. As such, he has failed to state a claim for actual fraud, and U.S. Bank's motion to dismiss is properly granted at this stage.

### IV. CONCLUSION

For the foregoing reasons, U.S. Bank's motion to dismiss shall be granted. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this 19th day of June, 2012.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE